**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **YVONNE SALAZAR,** )<br>)<br>    **Plaintiff/Petitioner,** )<br>)<br>**vs.** )<br>)<br>**MICHAEL J. ASTRUE, COMMISSIONER** )<br>**OF SOCIAL SECURITY,** )<br>)<br>    **Defendant/Respondent.** ) | **Case No. CIV-08-505-L** |

**REPORT AND RECOMMENDATION**

Yvonne Salazar ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing her applications seeking disability insurance benefits and supplemental security income payments in July, 2005, claiming in part that rheumatoid arthritis limited her ability to work [Tr. 52 - 54 and 317 - 323]. Plaintiff originally claimed that her limitations became disabling as of July, 1998, *id.*, but her attorney subsequently amended this date to January 17, 2002 [Tr. 372]. Plaintiff's claims were denied

initially and upon reconsideration [Tr. 43 - 46, 310 - 312, and 313 - 316]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted a February, 2007 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 368 - 390]. In his March, 2007 decision, the ALJ found that Plaintiff remained able to perform her past relevant work as well as other available jobs and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 14 - 20]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 3 - 6], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

On appeal, Plaintiff maintains that the ALJ erred in assessing the opinions of Plaintiff's treating physician, erred in formulating Plaintiff's residual function capacity ("RFC"),[1] erred in his conclusions regarding Plaintiff's credibility, and erred by failing to

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

consider her severe impairment of obesity. Reversal and remand is recommended because the ALJ's analysis of the treating physician's opinions was deficient; Plaintiff's remaining arguments on appeal will not be addressed. *See Watkins v. Barnhart,* 350 F.3d 1297, 1299 (10th Cir. 2003).

**Analysis**

Under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). A sequential analysis must be undertaken by an ALJ when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins,* 350 F.3d at 1300. The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion is well-supported by medically acceptable techniques. *Watkins,* 350 F.3d at 1300. At the second step, adjudicators are instructed that "[e]ven if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record." SSR 96-2p, 1996 WL 374188, at *2. If both of these factors are satisfied with regard to a medical opinion from a treating source, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion." *Id.* If, on the other hand, "the opinion is deficient

in either of these respects, then it is not entitled to controlling weight." *Watkins,* 350 F.3d at 1300.

Once the ALJ determines that a treating source opinion is not entitled to controlling weight, he must consider the weight he does give to such opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* "Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1300-1301. If he rejects the opinion completely, the ALJ must offer specific and legitimate reasons for so doing. *Id.*; SSR 96-2p, 1996 WL 374188, at *4; *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996).

Here, Robert McArthur, M.D., who specializes in rheumatology, first examined Plaintiff in April, 2000 and, pending his review of laboratory findings, diagnosed her with probable rheumatoid arthritis, referencing an "[e]xtensive fairly aggressive disease." [Tr. 284 - 285 at 285].[2] Dr. McArthur's next treatment note of January, 2002 indicated that he had

---

[2]According to information provided about rheumatoid arthritis by the Mayo Clinic,

Rheumatoid arthritis is an inflammatory form of arthritis that causes joint pain and damage. Rheumatoid arthritis attacks the lining of your joints (synovium)

not seen Plaintiff since August, 2001 [Tr. 287]; on examination, his impression was rheumatoid arthritis with "a lot of active synovitis" which was not being controlled by methotrexate.[3]  *Id.*  In April, 2002, the treatment notes show that "Remicade[4] assistance

---

causing swelling that can result in aching and throbbing and eventually deformity.  Sometimes rheumatoid arthritis symptoms make even the simplest activities - such as opening a jar or taking a walk – difficult to manage.

http://www.mayoclinic.com/health/rheumatoid-arthritis/DS00020

[3]The use of methotrexate as part of treatment regimen for rheumatoid arthritis is detailed by the Mayo Clinic publication as follows:

Doctors prescribe DMARDs [disease-modifying antirheumatic drugs] to limit the amount of joint damage that occurs in rheumatoid arthritis.  These drugs are typically used in the early stages of rheumatoid arthritis in an effort to slow the disease and save the joints and other tissues from permanent damage. . . . Common DMARDs include . . . methotrexate. . . .

http://www.mayoclinic.com/health/rheumatoid-arthritis/DS00020/DSECTION=treatments-and-drugs

[4]The Mayo Clinic information explains the use of Remicade and similar inhibitors:

TNF-alpha is a cytokine, or cell protein, that acts as an inflammatory agent in rheumatoid arthritis.  TNF inhibitors target or block this cytokine and can help reduce pain, morning stiffness, and tender or swollen joints – usually within one or two weeks after treatment begins.  There is evidence that TNF inhibitors may stop progression of the disease.  These medications are often taken with methotrexate. TNF inhibitors approved for treatment of rheumatoid arthritis are etanercept (Enbrel), infliximab (Remicade) and adalimumab (Humira).  Potential side effects include . . . worsening congestive heart failure (infliximab), blood disorders, lymphoma, demyelinating diseases, and increased risk of infection, including serious infection leading to death if treatment is delayed. . . .

paperwork [was] filled out." [Tr. 288].  Thereafter, numerous records – lab reports, patient self-evaluation forms, and Remicade Infusion Worksheets[5] [Tr. 185 - 235, and 253 - 282, 290 - 307, and 327 - 364] – demonstrate that Dr. McArthur treated Plaintiff on a frequent and continuing basis through May 31, 2007 [Tr. 327].

On November 18, 2005, Dr. McArthur completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) [Tr. 181 - 183].  He concluded that Plaintiff's impairment would limit her to lifting/carrying less than ten pounds [Tr. 181] and to standing and/or walking less than two hours in an eight-hour workday. *Id.*  Dr. McArthur further opined that Plaintiff must periodically alternate sitting and standing to relieve her pain or other discomfort [Tr. 182], and that both her upper and lower extremities would be limited as to pushing and pulling.  *Id.*  In describing the medical findings in support of his

---

*Id.*

[5]The record on appeal shows that Plaintiff received at least thirty-six Remicade infusions from mid-2002 through mid-2006 [Tr. 363 and 267] and that the infusions continued through the date of the ALJ's decision [Tr. 329].  Information provided by the National Institutes of Health explains how Remicade (infliximab) is administered:

> Infliximab comes as a powder to be mixed with sterile water and administered intravenously (into a vein) by a doctor or nurse.  It is usually given in a doctor's office every 2-8 weeks.  It will take about 2 hours for you to receive your entire dose of infliximab.
>
> Infliximab may cause serious allergic reactions during an infusion and for 2 hours afterward.   A doctor or nurse will monitor you during this time to be sure you are not having a serious reaction to the medication.

http://www.nlm.nih.gov/medlineplus/druginfo/meds/a604023.html

conclusions, Dr. McArthur listed "swollen and painful joints[,] shoulders, elbows, wrists, fingers, knees, ankles, [and] feet[.] *Id.* He also stated that Plaintiff experiences a "lot of low back and hip pain." *Id.* In connection with postural limitations, Dr. McArthur opined that Plaintiff could never climb, kneel, crouch, or crawl and that she could only occasionally balance. *Id.* He found that she was limited in reaching, handling, fingering and feeling; she suffered from environmental limitations because she experienced increased pain as a result of temperature extremes and vibration. *Id.* Plaintiff's ability to see was limited because her "eyes [were] affected with rheumatoid flares."[6] *Id.* Finally, Dr. McArthur added that, "I believe the patient to have been medically disabled since January 2002." *Id.*

The ALJ's decision assesses Dr. McArthur's treatment notes and opinions in the following manner:

> The medical records show that the claimant has been diagnosed with rheumatoid arthritis. She was referred to rheumatologist Robert L. McArthur in April, 2000. At that time he suspected rheumatoid arthritis but felt sure she had some inflammatory arthritis. Dr. McArthur's progress notes do indicate that he diagnosed her with rheumatoid arthritis. Apparently, the claimant saw Dr. McArthur infrequently for a few years. One progress note dated January 17, 2002 indicates that he had not seen the claimant since August, 2001. The

---

[6]According, again, to information provided by the Mayo Clinic,

Rheumatoid arthritis signs and symptoms may vary in severity and may even come and go. Periods of increased disease activity – called flare-ups or flares – alternate with periods of relative remission, during which the swelling, pain, difficulty sleeping, and weakness fade or disappear.

http://www.mayoclinic.com/health/rheumatoid-arthritis/DS00020/DSECTION=symptoms

notes show that the claimant began receiving Remicaide [sic] infusions in July, 2002 and began receiving them more frequently, at least monthly by 2005. Treatment notes show that on flare-ups the claimant has tender points. Notes also show that she responds to treatment and is doing well.

In connection with this claim for disability, the claimant underwent a consultative examination on September 22, 2005, conducted by Dennis Brennan, D.O.  On examination, the claimant [sic] extremities were symmetrical with no overt deformity.  Range of motion in all joints was physiologic and without evidence of crepitus, effusion, or masses.  There was no evidence of digit nodularity or osseous atrophy.  Grip strength was 5/5 bilaterally.  Strength of upper and lower extremities was 5/5 bilaterally.  There were no remarkable neurological findings and no sensory deficits.  Hand skills were within normal limits, straight leg raising was negative and gait was safe and stable at an appropriate speed.

* * *

The record also contains a medical source statement from Dr. McArthur, the claimant's treating physician.  This is a pre-printed form assessing the claimant's ability to do work-related activities and dated November 18, 2005. Dr. McArthur indicates that the claimant can lift less than 10 pounds occasionally and less than 10 pounds frequently.  She can stand and/or walk less than 2 hours of an 8-hour day and must periodically alternate between sitting and standing.  He also indicates that the claimant can occasionally balance but can never climb, kneel, crouch or crawl.  He also indicates the claimant has limited reaching, handling, fingering and feeling and should be limited in her exposure to temperature extremes, noise, humidity, and fumes and odors.

Generally, the opinion of a treating physician is accorded a great deal of deference.  Indeed, it can be entitled to controlling weight provided it is supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with other substantial evidence of record (Social Security Ruling 96-2p).  Here, Dr. McArthur's opinion is not entitled to controlling weight. Certainly, his opinion is probative, but must be reconciled with his own treatment notes and other evidence. Dr. McArthur's records indicate that the claimant report [sic] some significant pain during flare-ups. However, his notes also show that she responds to infusion treatment and most of the notes indicate that the claimant is doing well and feeling well. Also, Dr. McArthur's notes, as well as other evidence such as Dr. Brennan's examination, do not

   show objective findings of limitation. Although some of the areas of concern highlighted by Dr. McArthur, such as postural limitations, may have some moderate limitation, the treatment records and other evidence do not demonstrate such a debilitating condition as suggested by the assessment form.

[Tr. 18 - 19 (record references omitted)].

  Following his review of the medical evidence, the ALJ concluded that Plaintiff had the RFC to perform a wide range of light work with frequent reaching and occasional stooping, kneeling and crouching [Tr. 17].

  Plaintiff argues that the ALJ failed to apply the proper standards in his assessment of Dr. McArthur's opinions. The undersigned agrees. As to the first stage of the analysis of the treating physician's opinions, the ALJ determined that Dr. McArthur's opinions were not entitled to controlling weight [Tr. 19]. There are two parts to the controlling-weight analysis: (1) "whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) whether the opinion "is consistent with other substantial evidence in the record." *Pisciotta v. Astrue,* 500 F.3d 1074, 1077 (10th Cir. 2007). It appears that the ALJ declined controlling-weight status to Dr. McArthur's opinions based on the application of the second factor.[7] He stated that Dr. McArthur's opinions, while probative, must be reconciled with his own treatment notes [Tr. 19].[8] He then noted that the while the

---

  [7]An opinion is not entitled to controlling weight if that opinion is not well-supported *or* is inconsistent with other evidence of record. SSR 96-2p, 1996 WL 374188, at *2.

  [8]The ALJ also found that Dr. McArthur's opinions are not consistent with those of the consultative examiner, Dr. Brennan, who found Plaintiff to be essentially normal on examination [Tr. 236 - 242].

treatment records reflected Plaintiff's report of significant pain during flare-ups, the records also show that Plaintiff responds well to the Remicade infusions and "most of the notes indicate the claimant is doing well and feeling well." *Id.*

As support for the latter finding, the ALJ cites to Exhibit 10F. *Id.* The undersigned's review of this exhibit [Tr. 261 - 282] reveals that on April 27, 2006, Plaintiff reported that she was feeling "very sick" with a pain level of seven on a ten-point scale [Tr. 282]. She tolerated her thirty-third Remicade infusion well [Tr. 279]. On June 8, 2006, however, no pain or other problems were noted and, once again, her thirty-fourth infusion was well-tolerated [Tr. 277 - 278]. Nonetheless, on June 15, 2006, Plaintiff reported that while she was feeling good that day, she had recently had a bad flare and could hardly walk at that time [Tr. 274 - 276]. Once again, however, at her thirty-fifth infusion on July 13, 2006 [Tr. 271], Plaintiff reported feeling "pretty good this month" [Tr. 270]. Likewise, Plaintiff was reported to be feeling good after her thirty-sixth infusion on August 24, 2006 [Tr. 267].

Accordingly, the records in the exhibit referenced by the ALJ reflect that Plaintiff reported "feeling well" on three occasions and advised of significant pain on two others. Whether this lends support to the ALJ's conclusion [Tr. 19] that "most" of Dr. McArthur's treatment records fail to support his functional assessment of the Plaintiff is debatable. Nonetheless, it is not an issue that must be determined; reversal is required because of the ALJ's failure to adequately explain his rationale for the weight he did accord Dr. McArthur's opinions.

In this regard, even if the ALJ properly determined that Dr. McArthur's opinions were not entitled to controlling weight, "[t]reating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188, at *4. It is clear that the ALJ did not completely reject Dr. McArthur's opinions. Instead, he found them to be "probative" and accorded the postural limitations some significance [Tr. 19].[9] In other words, he gave at least some of the opinions at least some weight. There is no discussion, however, of exactly what weight or how the ALJ applied the prescribed factors. For example, there is no indication of whether the ALJ considered the length of Dr. McArthur's treatment relationship with the Plaintiff or the fact that Dr. McArthur is a specialist.[10] There is no explanation of why the ALJ found Dr. McArthur's opinion on Plaintiff's postural limitations – with the exception of crawling – to have probative merit while at the same time giving no weight to, for example, his opinions regarding exertional, visual, and environmental limitations. As was the case in *Watkins,* 350 F.3d at 1300,

> Here, the ALJ failed to articulate the weight, if any he gave [the treating physician's] opinion, and he failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether. We cannot simply presume the ALJ applied the correct legal standards in considering [the treating

---

[9] While Dr. McArthur opined that Plaintiff could never climb, kneel, crouch, or crawl [Tr. 182], the ALJ limited her to occasional stooping, kneeling, or crouching [Tr. 17]. The only other functional assessment of record – that of the State agency consultants– contained no postural limitations [Tr. 245].

[10] This factor would appear to be of particular significance in connection with a disease that variously remits and flares.

>physician's] opinion. We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion.

*Id.*

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings. The parties are advised of their right to object to this Report and Recommendation by April 6, 2009, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 16th day of March, 2009.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE